Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3801 | **DATE** | 1/11/2001 |
| **CASE TITLE** | Fireman's Fund Insurance vs. El Al Israel Airlines, Ltd. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We enter judgment against El Al for the value of the lost cargo without any limitation of liability. We order plaintiff to submit an appropriate judgment order consistent with this opinion by 2/1/2001.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 12 2001 | 38 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | 01 JAN 12 AM 11: 16 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIREMAN'S FUND INSURANCE a/s/o MOTOROLA, INC., <br><br> Plaintiff, <br><br> v. <br><br> EL AL ISRAEL AIRLINES, LTD., et al., <br><br> Defendants. | No. 99 C 3801 <br><br> Judge Wayne R. Andersen <br><br> **DOCKETED** <br> JAN 1 2 2001 |

## MEMORANDUM OPINION AND ORDER

This case comes before the court on cross-motions for summary judgment on the issue of whether defendant, El Al Israel Airlines, Ltd. ("El Al") may limit its liability for a loss occurring while it transported communications equipment for Motorola, Inc. pursuant to the terms of the Warsaw Convention. Plaintiff, Fireman's Fund Insurance, ("plaintiff") is subrogated to the rights of Motorola for the value of the goods at issue here. For the reasons stated below, we grant plaintiff's motion and hold that El Al may not avail itself of the limitation of liability protection of the Warsaw Convention.

## FACTUAL BACKGROUND

The material facts in this case are not in dispute. At issue is the extent to which El Al is liable to plaintiff for the value of one lost carton of communications equipment. El Al has admitted it is liable for the loss. However, the parties dispute the amount of the damages.

El Al is a foreign air carrier authorized to provide cargo and passenger services between Israel and Chicago. On approximately June 6, 1997, El Al's agent, Transworld M. Mordehay, Ltd.,



issued Air Waybill No. 11405253-0553 regarding a shipment of 251 cartons of communications equipment from Tel Aviv, Israel to O'Hare International Airport in Chicago for Motorola's account. El Al took possession of this shipment in Israel in good order and condition. The goods were transported on El Al Flight No. 9875 on June 6, 1997.

The Air Waybill issued by El Al's agent identifies Tel Aviv as the airport of departure and ORD (designating O'Hare) as the airport of arrival for Flight No. 9875. The Air Waybill does not indicate a stopping place. It does, however, reserve the right of El Al to "select the routing and all intermediate stopping places that it deems appropriate or to change or deviate from the routing shown on the face hereof."

Flight No. 9875 landed at Schiphol Airport in Amsterdam, The Netherlands at or about 16:56 Zulu time on June 7, 1997. ("Zulu" time refers to a coordinated universal time system which uses the twenty-four hour military clock. Zulu time previously was referred to as "Greenwich Mean Time." To convert Zulu to U.S. standard time, subtract five hours from Zulu time for Eastern Time, subtract six for Central Time, seven for Mountain and eight for Pacific Standard Time. Zulu time is used for air travel schedules and weather forecasts.) When the plane left Schphol Airport in Amsterdam at approximately 21:10 Zulu time on June 7, 1997, the flight was designated Flight No. 1875. It landed at O'Hare at approximately 5:13 Zulu time on June 8, 1997. Unfortunately, when the plane landed, it landed with only 250 of the 251 cartons of the communications goods.

Plaintiff claims that El Al owes it $164,418.54 for the lost goods. El Al counters that Article 22 of the Warsaw Convention limits its liability for lost or damaged cargo to an amount no greater than $9.07 per pound. Plaintiff asserts that El Al may not take advantage of the Convention's limitation of liability because it failed to comply with the provisions of Articles 8 and 9 of the

2

Convention. Specifically, plaintiff contends that El Al failed to include the stop in Amsterdam as an "agreed stopping place" within the meaning of Article 8 of the Convention and, therefore, under Article 9 of the Convention, it cannot limit its liability to plaintiff. Therefore, we must determine whether El Al complied with the requirements of the Convention so as to garner its considerable protections.

## DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, we may grant summary judgment only if the factual record shows that no genuine issue of material fact exists and the movant is therefore entitled to judgment as a matter of law. In this case, the parties agree on the dispositive facts and we are presented with a clear legal question.

The Warsaw Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." The Convention provides a uniform system of liability and documentation in international air travel and limits, provided certain conditions are met, the potential liability of air carriers for lost or damaged cargo. See Onyeanusi v. Pan American World Airways, Inc., 952 F.2d 788, 792 (3d Cir. 1992). Specifically, Article 22(2) of the Warsaw Convention limits a carrier's liability to twenty dollars per kilogram, unless the shipper makes a special declaration of greater value and pays any required extra fees. However, Article 9 of the Convention provides as follows:

> If the carrier accepts goods without an air waybill having been made out, or, if the air waybill does not contain all the particulars set out in Article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

3

Article 8(c) of the Convention provides that the air waybill shall contain "[T]he agreed stopping places, provided that the carrier may reserve he right to alter the stopping places in case of necessity, and that if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character."

It is, of course, undisputed here that the air waybill in this case made no mention of the stop which the El Al airplane made in Amsterdam. However, El Al nevertheless urges us to limits its liability in accord with Article 22. El Al advances several different arguments in advance of its position. We will address each in turn.

El Al first contends that Amsterdam was not an "agreed stopping place." It argues that Motorola and/or its agent and El had reached no agreement concerning the Amsterdam stop and, therefore, it cannot be penalized for failing to disclose this stop on the air waybill. In other words, El Al argues that unless the parties reach an explicit agreement concerning the stop, and that stop is then omitted from air waybill, Article 9 is not applicable. Although the Seventh Circuit has not construed the applicable provisions of the Warsaw Convention, we do not believe that El Al's narrow construction of the Convention makes sense.

Instead, we agree with the district court's analysis in Sotheby's v. Federal Express Corporation, 97 F.Supp.2d 491 (S.D.N.Y. 2000). In that case, the defendant made an identical argument. However, as that court pointed out, Article 8(c) at its essence is a notice provision. See Intercargo Ins. Co. v. China Airlines, Ltd., 208 F.3d 64, 68 (2d Cir. 2000). "If the term 'agreed' is interpreted to mean that both the shipper and the carrier literally agreed to the stoppping places, then notice to the shipper of those stopping places would be superfluous." Sotheby's, 97 F.Supp.2d at 497. In other words, the shipper would already be aware of the stop which would render further

4

notice to it redundant and, therefore, Article 8(c) meaningless. The only rational interpretation of "agreed" in Article 8(c) is that it requires the carrier to include on the air waybill all of the anticipated stops and then the shipper agrees to those stops by accepting the shipment under the waybill. As the Sotheby court recognized, the alternative interpretation completely undermines the provision because, under that construction of Article 8(c), "a carrier could unilaterally decide to send cargo anywhere in the world but because the shipper had not "agreed" that these places were stopping places, the carrier would not be required to list them on the waybill and the carrier would not lose the limitation of liability." Id. at 498-499. This obviously doesn't make sense, particularly when the Convention further provides that a carrier out of necessity may have to stop at places beyond its contemplation at the time of the shipment and may alter its route in such instances without fear of losing the limitation of liability. If Article 8(c) is read as El Al urges, that provision would be completely unnecessary to preserve the limitation from being lost in cases where it is necessary for the carrier to alter its route. Id. at 499.

El Al puts a further spin on its argument concerning the meaning of "agreed stopping places." It contends that its explicit reservation of the right to alter its route or change "intermediate stopping places" obviated the need to include the Amsterdam stop on the waybill because the shipper was on notice that the route and/or stops could change. The Ninth Circuit recognized the validity of this argument in Insurance Co. of North America v. Federal Express Corporation, 189 F.3d 914 (9th Cir. 1999), a case which departed from a line of cases in which the Second Circuit held otherwise. In that case, the court held that the air waybill made it perfectly clear that there were no agreed stopping places because defendant Federal Express reserved its right to route the equipment at issue as it saw fit. However, we disagree with the court's analysis in that case.

5

First, we have some doubt that Amsterdam is truly an "intermediate" stop. The waybill specifically describes the flight between Tel Aviv and Chicago as Flight No. 9875. However, after the plane left Amsterdam, the flight was re-designated Flight No. 1875, implying that there were two separate flights. Even assuming, however, that the Amsterdam stop falls within the reservation of rights contained in the air waybill, this language would have "the effect of relieving the carrier of the full liability that would ordinarily be imposed upon it by the Warsaw Convention. As a consequence, the contractual provision is rendered null and void by Article 23 of the Warsaw Convention." See 49 U.S.C. § 40105, Art. 23 ('Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this convention shall be null and void, but the nullity of any such provision shall not involve the nullity of the whole contract, which shall remain subject to the provisions of this convention.')" cited in Sotheby's, 97 F. Supp.2d at 501. And, as plaintiff points out, Article 8(c) explicitly reserves the right to alter stopping places only in cases of "necessity," which suggests that the Convention disfavors a sweeping reservation of the right to make any and all changes to the flight route without losing the limitation of liability protection. In addition, we note that our limitation of the language in the air waybill does not render this reservation meaningless because we can think of many other reasons why El Al would want this provision it its contracts other than an attempt to limit its liability under the Warsaw Convention. Such contractual language could, for example, bar any potential consequential damages arising from allegations that El Al chose a different and longer route to arrive at the agreed upon designation.

The Second Circuit's thoughtful line of cases concerning the requirement to include "agreed stopping places" in the air waybill are instructive. These rulings were recently discussed and reaffirmed in Intercargo Insurance Co. v. China Airlines, Ltd., 208 F.3d 64 (2d Cir. 2000).

6

In that case, the court analyzed whether an air waybill which incorporated scheduling information by reference complied with Article 8(c) of the Convention. The court noted that it previously had created an alternative method for compliance with Article 8(c) when the air waybill did not identify the intermediate stopping place, but other information provided to the carrier explicitly incorporated that information by reference. For example, in Brink's Ltd v. South African Airways, 93 F.3d 1022 (2d Cir. 1996), the Second Circuit held that, although the waybill in question did not provide the intermediate stopping place in the place where it normally would appear, the waybill incorporated by explicit reference timetables which clearly revealed those places, thereby giving effect to Article 8. However, in a subsequent case, Tai Ping Ins. Co. v. Northwest Airlines, Inc., 94 F.3d 29, 33 (2d Cir. 1996), the court made it plain that, even though the international nature of the flight obviously was revealed by the departure and destination airports, and the timetables were incorporated by reference, because the actual trip deviated from these timetables, they were ineffective to ensure a limitation of liability. In other words, Article 8(c) stands for more than the proposition that notification of the international nature of the flight is the real purpose behind this provision. For this reason, we respectfully disagree with Judge Nordberg's conclusion (and El Al's argument which is based in part on that conclusion) that the "logical extension of the determination made in Brink's is that a waybill need not provide complete routing information where the international character of the carriage is clear from the origination and destination points." Al Marine Adjuster's Inc. v. Forwarding Systems, Int'l, 1999 WL 199588, at *6 (N.D. Ill. March 31, 1999).

We agree with the Second Circuit that Article 8(c) on its face requires more than notification of the international nature of the flight. As we already have stated, Article 8(c) is a notice provision.

7

We do not believe that our interpretation imposes a substantial burden on the carrier. To avail itself of the liability limitation, the carrier need only state clearly the intermediate stops on the air waybill or, at the very least, incorporate by reference accurate information about them. Nor do we believe even if El Al's proffered evidence that it was "common knowledge" that the Amsterdam stop was part of El Al's route were true, that would create an exemption from Article 8(c) for El Al. Such an interpretation would undermine the effect of Article 8(c) and place a burden on the courts to determine what the parties actually knew or should have known about the air carriage. Nothing in Article 8(c) suggests that the courts should decide this question when the carrier has failed to include the language which is required. In short, we hold that El Al may not limit its liability as set forth in Article 9 of the Convention because it failed to comply with the requirements of Article 8(c).

El Al, however also makes an alternative argument. It urges us to apply the Montreal Protocols, which preserved the limitation of liability even if the carrier fails to identify the "intermediate stopping place." El Al contends that Motorola had no vested rights which would be impaired should we apply the Montreal Protocols retroactively. It argues that Motorola was fully cognizant that the air travel here was international in scope and should have paid for additional insurance to cover its enhanced risk. According to El Al, Motorola chose not to and would not have changed its decision if it had known about the stop in The Netherlands. Therefore, El Al contends, we should not allow Motorola's subrogee to take advantage of the windfall which expands El Al's liability to it.

El Al's argument has a certain superficial appeal. Motorola may not have done anything differently had it known about the intermediate stop. But we are disinclined to speculate about this and will not retroactively apply the Montreal Protocols, which changed the substantive requirements

8

of the Convention, based on that speculation. The bottom line is that the Convention in effect at the time mandated that El Al identify its stops. El Al offers no persuasive authority to support its contention that we should depart from the longstanding judicial practice that disallows the retroactive application of statutes affecting substantive rights which contain no express congressional intent to require retroactive application. See <u>United States Fidelity & Guaranty v. United States ex. rel. Struthers Wells Co.</u>, 209 U.S. 306 (1908). El Al's argument boils down to the proposition that, because the law was changed in its favor subsequent to the time that events at issue in our case took place, we should simply read the old law in such a way as to favor its case. We decline to do so.

El Al's final argument it that is entitled to sovereign immunity pursuant to 28 U.S.C. § 1603. El Al utterly fails to flesh out this argument any further and we decline to speculate on why El Al should be afforded such protection without any support beyond El Al's bald assertion that it is so entitled. We note that we are skeptical that El Al and Israel can opt out of an international treaty it has ratified by a simple assertion of sovereign immunity.

## CONCLUSION

For all of the forgoing reasons, we enter judgment against El Al for the value of the lost cargo without any limitation of liability. We order plaintiff to submit an appropriate judgment order consistent with this opinion by February 1, 2001.

_____
Wayne R. Andersen
United States District Judge

Dated: January 11, 2001

9